**In re HAUGEN CONSTRUCTION SERVICE, INC., Debtor.**

**Bankruptcy No. 85–05321.**

United States Bankruptcy Court, D. North Dakota.

April 4, 1989.

Phillip D. Armstrong, trustee.

Edward F. Klinger, for Butler Machinery.

James H. Levy, for trustee.

John Petrik, for Westlie Motor Co.

Richard Olsen, for First American Bank and Trust of Minot.

Michael Fadlovich, U.S. Trustee's Office.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By motion filed November 28, 1988, Butler Machinery Company (Butler), an unsecured creditor of the Debtor, Haugen Construction Service, Inc. renewed its efforts

to remove Phillip D. Armstrong (Armstrong) as Chapter 7 trustee. On two prior occasions in March and December, 1987, Butler unsuccessfully sought Armstrong's removal under section 324 of the Bankruptcy Code charging then, as now, that Armstrong committed malpractice and misfeasance in that he failed to pursue preferences in a timely fashion, compromised claims without notice and generally failed to carry out his duties in a capable fashion all to the detriment of the creditors but more specifically to the detriment of Butler. More specifically, Butler now asserts that cause for removal under section 324 is established by the following failures on the part of Armstrong:

1. Failure to pursue preferences and post-petition transfers within the statute of limitations;

2. Failure to pursue bona fide causes of action against First American Bank and Trust, Gary Haugen, the Debtor and related companies;

3. Compromising and settling claims without notice to creditors, particularly Butler;

4. Failure to communicate and cooperate with Butler;

5. Failure to notify Butler of its failure to file a formal proof of claim.

The motion, resisted by Armstrong as well as the United States Trustee, was heard on January 12, 1989, at the conclusion of which, the court directed Armstrong to provide the court in affidavit form a detailed accounting of all investigations undertaken and conclusions reached. Upon submission, the parties were to submit briefs relative to their positions. The requested accounting was duly filed on February 14, 1989, followed by briefs of the parties.

Before commenting upon the evidence and Butler's arguments for removal, it is necessary to understand the case generally and how the parties came to be at odds over Armstrong's performance.

*Factual Background*

1.

The Debtor, Haugen Construction Service, Inc., began in the 1970's as a sole proprietorship owned by Gary Haugen. Its principal business was heavy construction. The company was incorporated in 1981 with Gary Haugen as principal officer and stockholder. Haugen later purchased the assets of a Minot, North Dakota gravel business which he incorporated as Minot Sand and Gravel, Inc. Over the years Haugen became involved in additional business enterprises among them, Haugen Development, Haugen Farms, Impact Rollers, Inc., and Property Investors.

In February 1985, Butler prevailed in a state court action against the Debtor and Gary Haugen individually receiving a judgment in the sum of $738,587.88 plus interest. The judgment was never satisfied.

On June 3, 1985, the Debtor filed for relief under Chapter 11 and in its Schedule A–3 Butler was listed as having an unsecured claim in the sum of $821,159.00 stemming from the earlier state award.

Butler immediately questioned the accuracy of the Debtor's schedules and the relationship between the various companies operated by him. Through its attorney, Edward F. Klinger, Butler conducted a Rule 2004 examination of Gary Haugen as well as the Debtor's bookkeeper in July 1985. Klinger was appointed as attorney for the creditor's committee in mid-August 1985 and concurrent with his appointment moved for the appointment of a trustee or examiner, it being his belief that the Debtor's assets were intermingled with Gary Haugen's other business interests. An examiner was appointed to conduct an examination of the Debtor's businesses including any allegations of fraud, misconduct, mismanagement or irregularity. Based upon the examiner's findings, Butler, through its attorney, on February 18, 1986, moved for conversion or dismissal. After a hearing at which the Debtor resisted conversion, this court on May 22, 1986, issued its Memorandum and Order for conversion of the case to Chapter 7 wherein it concluded, based upon the examiner's report, that the Debtor failed to file monthly accounting reports and appeared to be informally liquidating its assets without any regard for the re-

quirements of the Bankruptcy Code. The court concluded further that enough question existed as to the propriety of various post-petition transactions to warrant the involvement of a trustee to examine the Debtor's operation both pre- and post-petition in order that a fair and equitable distribution be obtained for the creditors.

The clerk's office issued its Notice of Conversion on June 3, 1986, which established September 22, 1986, as the last day for filing a proof of claim in the Chapter 7 case.

Armstrong was appointed interim trustee and on June 16, 1986, became permanent Chapter 7 trustee. Armstrong has been on the United States Trustee's panel of Chapter 7 trustees since June 1980 and in 1988 alone has assumed 500 new cases. According to the U.S. Trustee, Armstrong has never had any significant problems in administering estates.

### 2.

While operating as Chapter 11 Debtor-in-possession the Debtor, by its principal officer Gary Haugen, made a number of payments against pre-petition obligations essentially satisfying many of the Chapter 7 claims except for five including a large obligation owing to Westlie Motors. Butler's claim was not among the claims satisfied. Chagrined over being left out and also remaining convinced of improper (and possibly fraudulent) dealings between the Debtor and related companies, Butler again through its attorney began to spur Armstrong to action, dogging his every move.

Over the course of Armstrong's administration of the estate, he and attorney Klinger had numerous meetings and exchanged numerous letters pertaining to possible avoidance actions and other perceived improprieties on the part of the Debtor. The first discussion occurred on the day of the first meeting of creditors in June 1986, where attorney Klinger provided Armstrong with information pertaining to transfers of property between Gary Haugen, the Debtor, and related companies. Prior to this meeting Klinger had sent Armstrong a list of transfers between Gary Haugen and Westlie Motors, Property Investors and First American Bank and Trust, suggesting that they be investigated at the first meeting. Armstrong commenced to investigate these transactions and between June 16 and December 30, 1986, had demanded turnover of all checks, bank statements, as well as an accounting of all equipment used by the Debtor, Gary Haugen or related entities, and further requested a transcript of the conversion hearing as well as a transcript of the earlier 2004 examination conducted by attorney Klinger. In December 1986 a letter of inquiry was sent to the Debtor's bookkeeper seeking explanation for twenty-three perceived preferences.

Prior to December 1986 no attorney had been appointed to represent the trustee although attorney Klinger had expressed an interest back in June. In June 1986, Klinger had suggested to Armstrong the possibility of an equitable subordination claim lying against First American Bank and Trust and was anxious to have attorney James H. Levy appointed to represent the trustee in all claims against the bank. Butler consistently was of the opinion that the most promising source of recovery would be to bring equitable actions against the bank and that the best individual to pursue these actions on behalf of the estate would be Mr. Levy. In pursuit of this objective Klinger sent various letters at various times to Armstrong asking him to pursue the claim and to appoint Mr. Levy. Armstrong was willing to appoint Levy for this limited purpose on a contingency basis and so indicated in several letters. Until he was finally appointed in March of 1988, Levy continuously balked at taking the case on anything but an hourly fee basis. Armstrong's position was that the estate could not afford to pay an attorney on an hourly basis for something as open-ended as the cause of action against First American Bank and Trust seemed to be. Moreover, Armstrong was unconvinced of the merits of the case.

On December 23, 1986, Armstrong appointed himself as attorney to pursue voidable transfers and turnovers. In this ca-

pacity he sent inquiry letters to each of twenty-three possible preference recipients. He also investigated the dealings with Westlie Motors as well as those with First American Bank and Trust but early on in the case had concluded that pursuit of an equitable subordination claim against the bank would likely be unsuccessful.

Although Butler had failed to file a proof of claim in the Chapter 11 case and had never filed a formal proof of claim in the Chapter 7 case (a fact confirmed to Mr. Armstrong by the clerk's office in April 1987), it had been the most vocal of all the Debtor's creditors. The fact that Butler had never filed a formal proof of claim weighed heavily upon Armstrong's decision at this point because the time for filing a proof of claim had expired in September 1986 and thus he felt Butler would not be able to share in any distribution—a distribution which might never be necessary due to Gary Haugen having paid off most of the creditors.

Butler remained considerably aggravated by this lack of action on the part of Armstrong and at various times in 1986 as well as early 1987 sent him letters requesting a progress report. Finally, Butler filed a motion for Armstrong's removal on March 24, 1987, asserting as grounds his failure to pursue voidable transfers and his failure to pursue the equitable subordination claim. Pursuant to a hearing held on June 29, 1987, the motion was denied.

While the removal motion was pending Klinger continued to prod Armstrong into bringing an action against First American Bank and Trust but was advised by Armstrong in a June 22, 1987 letter that for the most part the perceived preferences were actually unavoidable as payments on post-petition debts. Armstrong further advised Klinger in the letter that after investigation he had no information suggesting that First American Bank and Trust was an insider or that it would be subject to equitable subordination. As to other post-petition payments, Armstrong advised that he was ready to pursue claims against Westlie Motors, First American Bank and Trust and others. In this letter he again told Klinger of Levy's refusal to represent the estate on a contingency basis.

Shortly after the June removal hearing, Armstrong entered into settlement negotiations with Westlie Motors, offering to forebear any preference action against it in exchange for Westlie withdrawing their $280,000.00 claim against the estate. This was done because, save for Westlie Motors and Butler, all undisputed claims had been paid by Gary Haugen. In a July 6, 1986 letter to the Debtor's attorney, Armstrong proposed a settlement of all outstanding claims by a one hundred percent payment by Gary Haugen of all claims and administrative expenses further indicating that if settlements were not accomplished shortly he would be commencing adversary proceedings. In the same letter Armstrong remarked that Butler failed to file a claim and was time-barred from doing so. A later October 1987 follow-up inquiry to all creditors with filed claims verified that all filed claims except for Westlie Motors and four others had been paid.

Throughout the summer and fall of 1987 Butler's attorney continued to express considerable displeasure with Armstrong and in September 1987 advised Armstrong that if Levy were not appointed as attorney, Butler would renew its motion to have Armstrong removed.

The second motion for removal was filed on December 14, 1987, based in part upon Armstrong's failure to pursue the equitable subordination action and his failure to retain attorney Levy. The motion was resisted by the Debtor, the U.S. Trustee, as well as First American Bank and Trust which in its response charged that Butler, as one who had failed to file a proof of claim, was in no position to complain about estate administration. First American's assertion that Butler was without standing prompted Butler on January 6, 1988, to move to amend what it perceived was an informal proof of claim evidenced by its long and active involvement in the case. The hearing was held on February 24, 1988, and the question of whether Butler should be allowed to amend its informal

proof of claim was taken under advisement.

Butler's second motion for Armstrong's removal was heard on January 15, 1988, at which Armstrong opined that he saw little point in pursuing any action against First American in view of the various settlements reached and for the additional reason that he remained unconvinced of the legal merits of such an action. He further believed that there was little point to even consider an action against First American until the court made a decision regarding whether Butler even had a proper claim. By Order entered January 21, 1988, the court declined to remove Armstrong but directed that any perceived claim against First American Bank and Trust be pursued either by Armstrong or other competent counsel before the statute of limitations ran. Regarding Butler's proof of claim, this court issued a Memorandum Order on February 29, 1988, concluding that Butler did have an amendable informal proof of claim which could be amended by filing a formal proof of claim. This court's opinion was upheld by the District Court on appeal (Appeal No. A4–88–149) and is now on appeal by Armstrong to the Eighth Circuit.

This court's allowance of Butler's claim prompted renewed remonstrations by attorney Klinger who again urged Armstrong to pursue various transfers and bring Levy in to the case as attorney for the trustee. On March 4, 1988, Armstrong applied for leave to appoint Levy as attorney to pursue post-petition transfers from the Debtor to First American Bank and Trust and on May 2, 1988, he further asked leave to appoint Levy to pursue alter ego and fiduciary actions against the Debtor, Gary Haugen, and any other related entities. Levy's appointment was sought on a contingency basis.

### 3.

During the months of April, May and June 1988 Armstrong commenced seventeen adversary proceedings seeking recovery of post-petition transfers. Included among these were actions against the following: Westlie Motor Company (Adv. 88–7051) seeking avoidance of a $110,000.00 post-petition transfer; First American Bank and Trust (Adv. 88–7033) seeking an avoidance of a $30,000.00 post-petition transfer; Property Investors Partnership and its partners individually (Adv. 88–7077) seeking recovery of a $10,719.00 preference; Norwest Bank, Minot (Adv. 88–7078) seeking recovery of a $4,800.00 fraudulent transfer; James H. Morten (Adv. 88–7047) seeking recovery of a helicopter; Farmers Union Oil Company of Minot (Adv. 88–7081) seeking recovery of a $10,000.00 post-petition transfer.

With concurrence of Butler, a settlement was reached with Westlie Motors (Adv. 88–7051) for $12,500.00. The action against Norwest Bank (Adv. 88–7078) was dismissed upon motion by the bank for summary judgment. The action against James H. Morten (Adv. 88–7047) was resolved against the trustee after trial. The action against First American Bank and Trust (Adv. 88–7033) was dismissed upon the bank's motion for summary judgment on the grounds the statute of limitations applicable to section 549 actions had run. The order was affirmed by the District Court (App. No. A4–88–149) and is now on appeal to the Eighth Circuit. The case against Farmer's Union Oil Company of Minot (Adv. 88–7081) was dismissed for the same reason. The action against Property Investors, et al (Adv. 88–7077) was recently dismissed on defendants' motion for summary judgment for the reason that the statute of limitations applicable to section 548 had run. Doubtless this decision will be appealed in due course. Trial of a section 548 action against Woodbridge, Chase, Schwinden and Thompson (Adv. 88–7069) has been continued pending the Circuit's decision in the First American Bank and Trust appeal. In addition to the adversaries specifically enumerated, settlements were reached in six other actions, another was decided in favor of the trustee upon stipulated facts, two others were voluntarily dismissed by Armstrong and another was dismissed by the court for lack of prosecution.

Shortly after his appointment, Levy, on behalf of the trustee, commenced the long

sought action against First American Bank and Trust (Adv. 88–7079) seeking an order directing the bank to file a claim which thereupon would be subordinated pursuant to section 510. Armstrong was long of the opinion that no action under section 510 was maintainable and on several occasions advised both attorney Klinger and attorney Levy of his position. His doubts have thus far proved correct for this court, upon the bank's motion for summary judgment, held section 510 was unavailable as a means of recovering assets for the estate and by Memorandum Order entered March 3, 1989, dismissed the case. This court's order is presently on appeal to the District Court.

Levy has commenced two other adversaries, one in the name of the trustee and the other a class action on behalf of Butler and other creditors but both seeking recovery against Gary Haugen, Haugen Construction, and all other entities operated by Haugen under the alter ego theory. These cases are pending trial scheduled for May 1989.

The only remaining unlitigated claim has to do with a Chicago lawsuit Gary Haugen was involved in and from which he personally received a $30,000.00 jury verdict. On several occasions Klinger has urged Armstrong to investigate the circumstances of this recovery, it being his belief the recovery belongs to the Debtor estate. Armstrong received various transcripts of Gary Haugen's testimony and sent letters to a Chicago law firm requesting information about the recovery. In January 1989 Armstrong was advised the verdict resulted in a payment to Gary Haugen personally and not the Debtor company. Armstrong's investigation of this matter is continuing but he essentially is of the view that once the appeals and the one open adversary are resolved the estate will be in a position to be closed.

### Discussion

A trustee, whether appointed under Chapter 7 or Chapter 11, is impressed with certain power and duties. These duties, for the most part, are set forth in section 704 of the Bankruptcy Code, to-wit:

The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, *with the United States trustee,* and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as *the United States trustee or* the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court *and with the United States trustee.*

■ In furtherance of the power to collect property of the estate, the trustee is empowered with extraordinary abilities to avoid and recover various liens and transfers including those that are fraudulent or preferential. *See* sections 544, 545, 547, 548, 549 and 550. Vested with these powers and duties a trustee serves as a fiduciary to the debtor's creditors and shareholders. *Commodity Futures Trading Com'n v. Weintraub,* 471 U.S. 343, 355, 105 S.Ct. 1986, 1994, 85 L.Ed.2d 372 (1985); *see also U.S. ex rel. Willoughby v. Howard,* 302 U.S. 445, 58 S.Ct. 309, 82 L.Ed. 352 (1938).

■ Under section 324(a) of the Bankruptcy Code a trustee may be removed for "cause". What constitutes sufficient cause is not defined in the Code but rather is left for the courts to determine on a case-by-case basis. As a fiduciary, a trustee may be held liable for any losses proximately caused by his willful and deliberate violation of his fiduciary duties. *Conn. Gen. Life Ins. v. Universal Ins. Co.*, 838 F.2d 612 (1st Cir.1988); *In re Rigden*, 795 F.2d 727 (9th Cir.1986). A trustee is not, however, responsible for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances. *Mosser v. Darrow*, 341 U.S. 267, 272, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951). Breach of fiduciary duties and actual fraud on the part of a trustee may constitute "cause" for his removal under section 324. Actual injury to the estate believed by Butler to exist in this case may also serve as cause for removal. *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50 (2nd Cir.1965). However, if the actual injury is the product of a mere mistake in judgment it, in and of itself, cannot serve as a basis for removal. The court in *In re Rigden, supra,* conceding that a trustee has a fiduciary obligation to conserve assets and maximize distribution, said a trustee will not be liable for the results of a mistake or decisions made if made with that degree of diligence and reasonable care normally expected of a prudent person under similar circumstances.

Here Butler does not allege nor do the facts of Armstrong's administration suggest actual fraud or malfeasance. Butler asserts, however, that the estate actually lost significant sums of money that were otherwise recoverable due to Armstrong's dilatoriness and failure to aggressively pursue preferences and potential claims against the Debtor and Gary Haugen. Butler generally views Armstrong's administration as a misfeasance of his obligations under section 704, section 548 and 549 which constitutes breach of his fiduciary obligations to creditors.

■ Even assuming Armstrong made a mistake in not pursuing preferences on a timely basis or not commencing other actions perceived by Butler to exist, his administrative decisions must be gauged against what, for lack of a better term, might be called the "reasonable trustee" test. This test has been expressed in *Ford Motor Credit Company v. Weaver*, 680 F.2d 451 (6th Cir.1982) as follows:

A bankruptcy trustee is liable in his official capacity for acts of negligence. The applicable standard is the exercise of due care, diligence and skill both as to affirmative and negative duties. The measure of care, diligence and skill required of a trustee is that of 'an ordinarily prudent man in the conduct of his private affairs under similar circumstances and with a similar object in view.' Mistakes in judgment cannot be the basis of a trustee's liability in his official capacity. The failure to meet that standard of care, however, subjects the trustee to liability in his official capacity. A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties. 680 F.2d at 461.

A trustee is under no mandatory duty to pursue and recover every transfer that might be avoidable under one of the Bankruptcy Code's avoidance sections. The relevant empowering provisions of sections 544, 545, 547, 548, 549 and 550 give the trustee discretion to utilize the remedies set forth but do not force him to do so. Each section says that a trustee "may" pursue the remedy, not that he must. In making a decision whether to pursue a section 547 preference, a 548 fraudulent transfer or any of the other recovery remedies, a trustee should do so only to the extent such action is "compatible with the best interest of parties in interest". *See* section 704(1). Such a decision involves weighing a myriad of factors and often requires making the decision at a time when not all of the factual inputs are available and when the estate does not have money available to conduct an expansive investigation of the facts. These factors include: the factual and legal merits of the prospective action; the probable value of the recovery to the estate; the probable cost of the action to the estate. In making

a decision, a trustee, cognizant of his fiduciary role, must avoid spurious lawsuits as well as those which, while having theoretical legal merit, would be unduly expensive to the estate, involve undue risk to the estate or likely result in minimal recovery for the estate. *In re Acadiana Elec. Service, Inc.*, 66 B.R. 164, 165 (Bankr.W.D.La. 1986).

■ Armstrong is a seasoned and capable trustee well versed in the law as well as practical aspects of case administration. Early into his administration of this case he made a thorough investigation of the Debtor company and its principal officer Gary Haugen. He also listened to suggestions given by attorney Klinger but his view of the case, it is fair to say, did not correspond to Klinger's. Armstrong's reluctance to commence preference actions prior to the spring of 1988 was a decision borne of the fact that without Butler as a creditor entitled to a distributive share of the estate, the expenses incidental to successfully prosecuting the actions would have been unduly burdensome and the actions themselves essentially pointless because most creditors with filed claims had been paid. Any preference recovery would simply have gone back to the Debtor. Until this court ruled otherwise, Armstrong, relying upon section 502, section 726 and Rule 3002, believed that Butler, having failed to file a formal proof of claim in the Chapter 7 case within ninety days after the first meeting, was not entitled to share in the estate. This assumption was not without legal merit. Indeed, Armstrong's position in that regard may still prove to be correct. Section 726, providing for the general distribution of Chapter 7 estate property, dictates the order in which assets are distributed and provides for a second priority for any "allowed unsecured claim". Normally, a claim is deemed allowed when a written proof of claim has been actually filed within the requisite time limit. *See* section 502 and Rule 3002. This court, however, chose to interpret the circumstances of Butler's case involvement as tantamount to an informal proof of claim and allowed its amendment. *In re Haugen Const. Services, Inc.*, 88 B.R. 214 (Bankr.D.N.D.1988).

Although Butler prevailed on this issue at this level that is not to infer that Armstrong's legal position was not warranted by existing law. It is an issue upon which lawyers and judges may differ and Armstrong could not be expected to administer the case or bring adversary proceedings in anticipation of this court's subsequent position—a position which may or may not be sustained in the final analysis.

The resulting losses due to Armstrong's failure to commence preference recoveries within the statute of limitation time limits were precipitated not by Armstrong's negligence, but rather by a mistake in legal judgment. His decision not to pursue preferences at a time when Butler had no formal proof of claim on file was a responsible decision given the state of the case at the time.

Armstrong's failure to appoint attorney Levy was due to Levy's refusal to work on a contingency basis as well as Armstrong's decided lack of enthusiasm for the merits of the equitable subordination claim against First American Bank and Trust. This court believes it would have been financially impossible as well as irresponsible for Armstrong to retain Levy on an hourly basis given the fact that the estate essentially had no funds with which to pay him coupled with Armstrong's impression of the intended actions questionable merit. As it has progressed thus far, Armstrong's analysis of the merits of a section 510 action has proved correct. The action was dismissed by this court and is now awaiting the appeal results. Again, as with the preference decisions, the issue of whether to pursue a section 510 action was one upon which legally trained people could reasonably differ—the position of either capable of reasoned and possibly persuasive argument. Armstrong was not irresponsible in his position.

In sum, and after a careful review of the main file as well as the numerous adversary proceedings it spawned, the affidavits and testimony as well as the briefs of counsel, this court believes that attorney Phillip D. Armstrong has carried out his duties of administration of this case in a responsible

manner, consistent with the degree of care expected of Chapter 7 trustees.

For the foregoing reasons the motion by Butler Machinery Company for his removal is DENIED.

SO ORDERED.