**In re Walfrid G. LUNDBORG, Jr., Debtor.**

**Bankruptcy No. 5–89–00059.**

United States Bankruptcy Court, D. Connecticut.

Feb. 1, 1990.

E. Huntington Deming, Coan, Lewendon and Royston, New Haven, Conn., for Richard M. Coan, Chapter 7 Trustee.

Susan Lundborg, Danbury, Conn., pro se.

Brian E. Lambeck, Greenfield, Krick & Jacobs, New Haven, Conn., for debtor.

## ORDER ON MOTIONS OF CREDITOR AND DEBTOR TO REMOVE TRUSTEE AND ON MOTIONS OF CREDITOR TO PRESERVE CREDITORS' INTERESTS AND TO DISMISS

ALAN H.W. SHIFF, Bankruptcy Judge.

Susan Lundborg ("Lundborg"), a former wife and a creditor of the debtor, has filed motions to remove the chapter 7 trustee, to preserve creditors' interests, and to dismiss this case. The debtor has also filed a motion to remove the trustee. The debtor's motion has been consolidated for trial with Lundborg's motions.

### I.

### MOTIONS TO REMOVE TRUSTEE

#### A.

This voluntary chapter 7 case was commenced on January 17, 1989. Attorney Richard M. Coan, a member of the panel of trustees, was appointed by the Office of the United States trustee to serve as trustee. The primary asset of the debtor's estate is 100% of the stock of a subchapter S corporation known as Connecticut Water Heater Company ("CWH").

Lundborg argues that the trustee has not diligently investigated the debtor's assets; he has not investigated the validity of certain claims filed against the estate; he mismanaged CWH, permitted some of its assets to be removed, permitted the debtor to run the company for longer than was appropriate at a salary and compensation package that was unreasonably high, and then turned its management over to Massachusetts Water Heater, Inc. ("MWH") without safeguarding the estate's interest; he has refused to cooperate with her; he has refused to give her copies of or permit her to examine the financial records of the estate and CWH; and he is not impartial, as evidenced by his willingness to discuss the purchase of the company with others but not with her. The basis for the debtor's motion is more obscure but appears to hinge on the argument that the CWH stock was substantially devalued when the trustee delayed its sale and permitted MWH to manage CWH.

The trustee claims that he has diligently pursued every reasonable avenue in an effort to maximize the debtor's estate so that as large a distribution as possible could be made to unsecured creditors. He points to the many hours he spent trying to negotiate a sale of CWH as evidence of that effort, and decries the fact that those who seek to have him removed were the ones who delayed the administration of this case by pressing for the sale of CWH on the basis of their distorted vision of its net worth.

CWH owns between 7,000 and 8,000 water heaters which it leases to consumers for approximately $7.00 per unit per year. In the early stages of the case, the debtor, Lundborg, and Jean Cowles, a second former wife, persuaded the trustee that CWH was a valuable asset, that he could generate enough money from the sale of the company to create a dividend for unsecured creditors after all secured creditors and administrative expenses were paid in full, and that he should market CWH as a going concern. Because he felt that the debtor was the only available person who had the expertise necessary to manage CWH, the trustee, with reservations, left the debtor in control of CWH through the spring and summer of 1989, despite protests from Lundborg and Cowles. During that period, the trustee attempted to evaluate the assets and liabilities of CWH and the other property of the estate, but his efforts were frustrated by missing or inadequate books and records. For that reason, the trustee sought and obtained approval of the appointment of an accountant.

During the summer and fall of 1989, the trustee attempted to sell the assets of CWH as a going concern, but due to the unique nature of its business, there was a limited market. To compound the problem, the trustee had a short time within which to find a buyer since CWH's creditors threatened to file an involuntary petition if

the trustee did not remove the debtor from management.

In September, despite certain unresolved questions regarding CWH's financial condition, MWH made an offer of $60.00 per water heater for a total of between $420,-000.00 and 480,000.00. At about the same time, the debtor offered to purchase all of CWH's stock for $80,000.00, assuming that CWH's total liabilities were $400,000.00. Under the debtor's proposal, there was to be a dollar for dollar increase or decrease in the price based upon an increase or decrease in the actual liabilities of CWH. The trustee gave the debtor several days to make a deposit, which he failed to do.

Lundborg also explored the possibility of purchasing CWH, which she claims was prejudiced by the trustee's refusal to provide her with the financial data she requested. The trustee testified that he made arrangements for her to inspect all of the available data in his or the accountant's possession. Lundborg has not pursued the purchase of either the assets or the stock of CWH, and despite his best efforts to follow up on all other leads, the trustee was unable to attract any other offers for the sale of the company's assets.

Recognizing that an involuntary petition might be filed if he didn't remove the debtor, the trustee discharged all CWH personnel, including the debtor, and entered into a management contract with MWH in the expectation that MWH would soon purchase CWH's assets. Under that contract, the trustee and MWH would evenly divide net revenue. In October, the trustee received a statement from his accountant which disclosed that CWH's liabilities were in the range of $800,000.00 to $1,000,-000.00. On the basis of that analysis, it was apparent that the proposed sale to MWH would not generate any money for the estate, and the sale was cancelled.

Other assets include three oriental rugs, a BMW, a Rolex watch, an interest in a partnership, a life insurance policy, overpayment of child support to Lundborg, and $1,000.00 cash which may be an asset of CWH.

**B.**

■ Code § 324(a) provides that "[t]he court, after notice and a hearing, may remove a trustee ... for cause." Cause, which is not defined by the Code, must be determined by courts on an ad hoc basis. *In re Haugen Constr. Serv., Inc.*, 104 B.R. 233, 240 (Bankr.D.N.D.1989). Cause has been found to exist, *inter alia*, where the trustee is not disinterested, *In re BH & P, Inc.*, 103 B.R. 556, 561 (Bankr.D.N.J.1989); *In re Paolino*, 80 B.R. 341, 344 (Bankr.E.D.Pa.1987), and where the trustee fails to perform his or her duties, *Matter of Schoen Enter., Inc.*, 76 B.R. 203, 206 (Bankr.M.D.Fla.1987), or unreasonably delays in the performance of those duties. *Matter of Island Amusement, Inc.*, 74 B.R. 18, 19 (Bankr.D.P.R.1987); *In re Mira–Pak, Inc.*, 72 B.R. 430, 431 (Bankr.S.D.Tex.1987). In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud. *In re Acadiana Electrical Serv.*, 66 B.R. 164, 165 (Bankr.W.D.La.1986); *United States ex rel. People's Banking Co. v. Derryberry (In re Hartley)*, 50 B.R. 852, 859 (Bankr.N.D.Ohio 1985). *See also Matter of Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir.1965). A trustee should not be removed for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances, *In re Haugen Constr. Serv., Inc., supra*, 104 B.R. at 240, and courts should consider the best interests of the estate, rather than those of a single movant-creditor, when determining whether to remove a trustee. *Baker v. Seeber (In re Baker)*, 38 B.R. 705, 708 (D.Md.1983); *Gross v. Russo (Matter of Russo)*, 18 B.R. 257, 273 (Bankr.E.D.N.Y.1982).

■ The debtor's argument is easily dismissed. He has offered no evidence in support of his assertion that the value of the CWH stock has declined during the administration of this case or that if there were such a decline, it was caused by any abuse of the trustee's discretion. Indeed, the evidence supports the conclusion that the trustee was misled if not deceived by the debtor's inflated estimate of CWH's net

worth, that he diligently followed every bona fide lead in an attempt to sell CWH's assets, and that when the company's gross insolvency was disclosed, the trustee made arrangements for a sale of the company's stock.[1]

Lundborg's motion is essentially premised on two grounds: that the trustee is not disinterested and that he is either unable or unwilling to perform his duties.

The trustee was the only witness in this proceeding, and Lundborg attempted to prove through his testimony that his refusal to communicate with her orally proved that he was biased. I find, however, that the trustee's explanation was credible and that his refusal to speak to her was justified. The trustee's uncontroverted testimony was that after Lundborg misrepresented to him a statement this court made and misrepresented to this court a statement he had made, he decided that it would be wise to memorialize by a writing any subsequent communications. Lundborg also claims that the trustee refused to give her the information she requested so that she could bid for CWH, but, as noted, the trustee testified that he told her that she could inspect any data he or his accountant were able to collect.

Lundborg's claim that the trustee is incapable of performing his duties is rejected. Richard Coan is an experienced, highly qualified professional who has served with distinction as a member of the panel of trustees for several years.

Lundborg's claim that the trustee failed to properly perform his duties fares no better. A trustee is the fiduciary of all of the creditors of a bankruptcy estate, but owes a primary duty to unsecured credi-

tors. *Lapiana v. Bank of Ravenswood (In re Lapiana)*, 100 B.R. 998, 1004 (N.D.Ill. 1989); *Fox v. Anderson (In re Thu Viet Dinh)*, 80 B.R. 819, 822 (Bankr.S.D.Miss. 1987). In determining whether the trustee has met that duty, the applicable test is whether the trustee has exercised due care, diligence, and skill as measured by a reasonable person standard, *i.e.*, whether the trustee has acted as an ordinarily prudent person would have acted under similar circumstances and with a similar purpose. *United States v. Aldrich (In re Rigden)*, 795 F.2d 727, 730 (9th Cir.1986); *Kershaw v. Behm (In re Kershaw)*, 81 B.R. 897, 900 (M.D.Tenn.1988).

A chapter 7 trustee is required to locate and bring into the estate all of the property of the estate; determine whether there is any equity for the estate; and if there is, liquidate the property in an efficient manner and distribute the proceeds to creditors in accordance with the distribution scheme established by the Code. *See* 11 U.S.C. §§ 541(a), 704(1), 726; S.Rep.No. 989, 95th Cong., 2d Sess. 93 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 379 (1977), U.S. Code Cong. & Admin.Code 1978, pp. 5787, 5879, 5963, 6334.

As a general rule, a trustee should not abandon property, file a Report of No Distribution,[2] or consent to relief from the automatic stay unless he has determined that the property is of no or "inconsequential value and benefit to the estate." *See* 11 U.S.C. § 554(a).[3] In making that determination with respect to real property, the trustee should ordinarily have it appraised unless the trustee has been given at least the following: (a) a current, independent, reliable appraisal, (b) a current title search or its equivalent, and (c) affidavits of debt.

---

1. On January 23, 1990, the trustee sold, at public auction in court, the estate's 100% interest in CWH's stock to MWH for $25,000.00. A group which included the debtor and his son bid $3,550.00.

2. A Report of No Distribution states in part: [T]rustee of the above-named debtor, reports that he has neither received any property nor paid any money on account of this estate except exempt property; that he has made diligent inquiry into the whereabouts of property belonging to the estate; and that there is

no property available for distribution from the estate over and above that exempted by the debtor.

Wherefor he prays that this report be approved, and that he be discharged from office.

3. Code § 554(a) provides:

After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

In the absence of either method or their equivalent, "[t]he trustee shall ... reduce to money the property of the estate". *See* 11 U.S.C. § 704(1). Other kinds of property should be evaluated according to its particular characteristics. If a trustee has a reason to believe that a debtor's business might produce more for the estate if sold as a going concern, it would be appropriate for the trustee to operate the business and seek court approval for the employment of necessary personnel for that purpose.

The trustee was told by the debtor and the debtor's former wives that CWH had significant value, but at the commencement of the case there was insufficient financial data from which he could make an independent assessment of their claims. I accordingly find that the trustee's judgment to operate the business and the management decisions which followed were well within his discretionary authority. Even if his business judgment was mistaken, and there is no evidence that convinces me that it was, none of his decisions regarding CWH rise anywhere near the test for his removal. For the reasons that follow, the same conclusion is reached with respect to the trustee's decisions regarding the other estate property.

Code § 704(5) requires a trustee to examine and object to the allowance of any proof of claim "if a purpose would be served". Lundborg argues that the trustee should have investigated certain claims against the estate. It is, however, abundantly clear from the evidence that there were no funds to distribute to unsecured creditors, particularly in the face of a $60,000.00 IRS administrative claim, and that no useful purpose would be served from such investigation.

Lundborg also challenges the trustee's failure to market certain "valuable" oriental rugs. The evidence, however, shows that the rugs are of questionable value, but more to the point, they are owned by the grossly insolvent CWH. Much of Lundborg's other criticism deals with various vehicles, but the trustee has convinced me that only one BMW was owned by the debtor and that that vehicle is to be auc-tioned, as is a Rolex watch. The trustee was questioned about a life insurance policy on the debtor's life with a $30,000.00 cash surrender value which Lundborg claims is security for alimony awarded by the state court. The trustee testified that the security interest is disputed.

For the foregoing reasons, I conclude that the movants have failed to show any cause for the removal of the trustee. To the contrary, I conclude that Trustee Coan has performed his duties with a high degree of skill, diligence, and dedication to service and that this estate has been well served by his stewardship.

## II.

### MOTIONS TO PRESERVE CREDITORS' INTERESTS AND TO DISMISS

Lundborg's motion to preserve creditors interests was not pursued and is deemed abandoned. Dismissal of a case under chapter 7 at the request of a creditor is governed by § 707(a). Although Lundborg's Motion for Dismissal and to Void Petition of Bankruptcy asserts claims which bring it within the purview of that section, none of those claims were supported by evidence. To the contrary, it is apparent that this case should not be dismissed. The trustee has liquidated assets and has asserted a claim against Lundborg which may succeed in bringing other property into the estate.

### CONCLUSION

The motions of Lundborg and the debtor to remove the trustee are denied; Lundborg's Motion to Preserve Creditors Interests and Motion for Dismissal and to Void Petition of Bankruptcy are denied; and IT IS SO ORDERED.