**In re Charles (NMI) REED, Debtor.**

**Bankruptcy No. 90–07085 PHX JMM.**

United States Bankruptcy Court,
D. Arizona.

March 3, 1995.

Charles Reed, pro se.

Julie M. Lemmon, Tamalyn E. Lewis, Ridenour, Swenson, Cleere & Evans, P.C., Phoenix, AZ, for Flood Control Dist. of Maricopa County.

Gary Ringler, Hobson & Ringler, Tempe, AZ.

Robert Vucurevich, Trustee, Phoenix, AZ.

## MEMORANDUM DECISION

JAMES M. MARLAR, Bankruptcy Judge.

The Court has the above-mentioned matters under advisement.[1] Various hearings

---

1. The Court notes that there are multiple dupli-
cative pleadings on the docket, all of which cover

have been held, culminating in the Court's request of the parties to file additional briefs. The issue concerning the Court is whether *res judicata* principles preclude Mr. Reed's claims against the Trustee, Maricopa County Flood Control District, and others. The Court having now considered the briefs and positions of the parties, the entire record, and applicable law renders its opinion on the debtor's Motion to Remove the Trustee, the Motion for Investigation, and the Motion to Moot Proceedings of 2/22/95.

## I. *FACTUAL HISTORY.*

The disputes in question today find their roots in a long and tortured chronology of events which began long before this bankruptcy proceeding was commenced. In May of 1984, the Flood Control District, represented by the Maricopa County Attorney's Office, brought suit against Reed for violations of a floodplain permit, *Mar. Co. and Flood Control Dist. of Mar. Co. v. Charles Reed, et al.* (C–513198), alleging that Reed had landfilled far in excess of the amount allowed under the permit. Reed, who was represented by counsel, counterclaimed and charged that the action was an unlawful taking of his property and alleged selective enforcement of floodplain regulations and state statutes. After trial in the Superior Court, on March 14, 1986, Judge Martone entered a formal judgment. Judge Martone ordered Mr. Reed to remove all fill wherever located in the floodway of the Salt River placed there by Reed. Mr. Reed filed a Motion for New Trial which was denied. Reed appealed the decision, and the Arizona Court of Appeals, on February 10, 1987 affirmed Judge Martone's decision, and issued a decision which found that Reed failed to prove that there was an unlawful taking of his property without just compensation. The Arizona Supreme Court denied Reed's petition for review on April 28, 1987.

After Mr. Reed failed to comply with the March 14, 1986 judgment, the County, on June 19, 1987, filed an Order to Show Cause regarding contempt in the Superior Court. Judge Cates found Reed to be financially unable to remove the fill and allowed Maricopa County and the Flood Control District to remove the illegal fill and file a judgment for the reasonable costs of removal. The fill removal had been completed by December 1989 and the County submitted an affidavit for costs in the amount of $897,448.96 to the Superior Court. Judge Goodfarb, to whom the case had been assigned, set a hearing on the reasonableness of the costs for July 18, 1990. Mr. Reed filed a Notice of Chapter 11 on July 9, 1990 and the Superior Court hearing was stayed until Judge Curley entered an order lifting the stay on November 30, 1990. The hearing on the reasonableness of costs was held January 17, 1991 in the Superior Court. Mr. Reed waived further evidentiary hearing on the cost of the landfill removal. The affidavit of costs was entered on March 3, 1991, and after no objections or responses by Mr. Reed, the court found that the costs were reasonable and entered on April 5, 1991 a judgment for $897,448.96 in favor of the Maricopa County and the Flood Control District.

On June 27, 1988, Mr. Reed brought an action for inverse condemnation in the U.S. District Court against Maricopa County and the Flood Control District, *Reed v. Mar. Co., Flood Control District, et al.* (CV88–1020). The complaint concerned the same five acres where the illegal fill was deposited by Reed and later removed by the County. Mr. Reed filed a Motion for Summary Judgment which was denied and the case was dismissed on December 22, 1989. Mr. Reed's Motion for New Trial was denied on January 31, 1990. Mr. Reed appealed to the Ninth Circuit. On February 22, 1991 the Ninth Circuit dismissed the appeal and found that Mr. Reed's action was barred by *res judicata* and the statute of limitations.

On September 11, 1989, Mr. Reed brought an action for inverse condemnation and an unlawful taking regarding the rebuilding of 67th Avenue with Federal Highway Funds in the Superior Court against Maricopa County, the Flood Control District, the Arizona Department of Transportation, and the U.S. Department of Transportation, *Reed v. Mar.*

the three basic requests set forth in the caption of this decision. This decision will dispose of all

requests set forth in docket numbers 162, 166, 170, 172, 173, 174 and 175.

Co., *Flood Control Dist., Arizona Dept. of Transportation, U.S. Dept. of Transportation* (CV89–25168). The complaint identifies the same real property where the illegal fill was deposited by Reed and later removed by the County. The U.S. Department of Transportation was dismissed by Mr. Reed 11 days after the complaint was filed. On January 10, 1990, the Superior Court dismissed the case as being barred by *res judicata* and the statute of limitations. Mr. Reed's Motion for New Trial (Rehearing) was denied.

On February 14, 1990, Mr. Reed brought a special action petition regarding, among other things, a taking of Reed's property and a claim for a false filing of a lien against Maricopa County and the Flood Control District, *Reed v. Mar. Co., Flood Control Dist., et al.* The special action was filed in Maricopa County (CV90–04417) and then removed to Gila County on April 18, 1990 (CIV90–116). The case was dismissed for lack of prosecution on November 27, 1990 by Judge Duber after the matter had been placed on the inactive calendar.

On February 14, 1990, Mr. Reed also brought an action in the U.S. District Court (CIV90–0263) alleging a false filing of a lien by the County and Flood Control District, the unconstitutional taking of property and conversion of funds in escrow, and a § 1983 Civil Rights Claim against current and former County officers and many employees of the County and Flood Control District. This action was dismissed on May 14, 1990.

Reed's dissatisfaction has been voiced to a number of governmental agencies and to both Senator John McCain and Representative Bob Stump. The Congressmen requested investigations by the appropriate governmental agencies. Senator McCain requested an investigation by the U.S. Department of Transportation, Federal Highway Administration previous to Mr. Reed filing his bankruptcy petition. After having looked into the matter at the Senator's request, on two occasions in 1989, the Department reported to Senator McCain that their investigation disclosed no wrongdoing. Representative Stump received a response from the Justice Department's Civil Rights Division. The correspondence to Representative Stump,

dated February 6, 1992 from an Assistant Attorney General, indicates that the Federal Bureau of Investigation had forwarded Mr. Reed's complaint to the Civil Rights Division. After a review of Mr. Reed's allegations, the Civil Rights Division concluded that any prosecutable violation of federal criminal civil rights statutes had not been disclosed by the complaint of Mr. Reed. Flood Control District of Maricopa County's Memorandum Regarding Debtor's Previous Actions, Exhibit 23, Docket No. 152.

Mr. Reed also contacted both the Maricopa County Attorney and the Arizona Attorney General prior to the filing of his bankruptcy petition. In a letter to the Attorney General, dated February 13, 1990, Mr. Reed requests the state to prosecute various County officials and accuses Maricopa County of "prosecuting a groundless false claim of a judgment lien." Docket No. 18. The Attorney General, in a response to Mr. Reed's letter dated March 6, 1990, informed Mr. Reed that there was pending litigation pertaining to the allegations in the February 13, 1990 letter in both the state and federal courts and that the Attorney General's Office was without jurisdiction. Docket No. 152.

Mr. Reed has also sought relief in the context of this bankruptcy proceeding. In a letter dated December 4, 1990, Mr. Reed requested that the Court help him "from the oppression ... from the Maricopa County Government and County Attorney's Office." The letter alleges, "Maricopa County has stolen my property...." Judge Curley, then presiding over Debtor's bankruptcy case, ordered the U.S. Trustee to conduct an investigation and report regarding the allegations in Mr. Reed's letter. The U.S. Trustee investigated the alleged theft of Debtor's property along with other matters and found that there had not been a depletion of the estate assets and that the allegations were without merit.

## II. *DISCUSSION.*

### A. *Request To Remove Trustee And To Order An Investigation.*

Most recently Mr. Reed has filed a "Motion and Complaint" requesting that the

Trustee be removed because the Trustee did not join in the request for an investigation of the Maricopa County Flood Control District. However, if this Court were to impose a requirement on the Trustee to pursue the allegations asserted by Mr. Reed, it would be outside of the scope of the Trustee's duties and responsibilities as defined by statute and case law. Accordingly, the Debtor has failed to establish a basis for removing the Trustee.

1. *The Trustee's duties and responsibilities.*

 A court-appointed Chapter 7 trustee acts as the legal representative of the estate. 11 U.S.C. § 323; *See also Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 (8th Cir. 1985). He is an independent person with no prior connection to either the debtor or the creditors. His primary job is to marshall and sell assets, so that those assets can be distributed to the estate's creditors and then close the estate. 11 U.S.C. § 704; *See also Ernst & Young v. Matsumoto (In re United Insurance Management, Inc.)*, 14 F.3d 1380, 1386 (9th Cir.1994); *Hyman v. Plotkin (In re Hyman)*, 123 B.R. 342, 347 (9th Cir. BAP 1991) *affirmed,* 967 F.2d 1316 (9th Cir.1992). Once assets are collected, they are paid out in the order of statutory priority. *See generally* 11 U.S.C. § 726. The Trustee is not, however, required to pursue every asset or cause of action belonging to the estate. If a claimed asset is determined to have no real value, the Trustee may abandon it during the pendency of the case on his own motion or upon the application of any party in interest. 11 U.S.C. § 554; *See also In re McCarron*, 1994 WL 553050, at *2 (Bankr.D.Idaho Aug. 12, 1994); *In re M.B.K., Inc.*, 92 B.R. 429, 435 (Bankr.C.D.Cal.1987); *See generally Meyer v. Fleming*, 327 U.S. 161, 165–67, 66 S.Ct. 382, 385–86, 90 L.Ed. 595 (1946); *Stanolind Oil & Gas Co., et al. v. Logan*, 92 F.2d 28, 31 (5th Cir.1937), *cert. denied,* 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592 (1938). If the asset is disclosed, and unadministered during the bankruptcy proceeding, it is deemed abandoned once the case has been closed. 11 U.S.C. § 554(c); *See also Havelock v. Taxel (In re Pace )*, 159 B.R. 890, 896 (9th Cir. BAP 1993) (only scheduled assets which have not been administered during the case are con-

sidered abandoned at the close of the case); *In re Prospero,* 107 B.R. 732, 734 (Bankr. C.D.Cal.1989) (citations omitted). Once an asset is abandoned, its "title" revests in the debtor, who may once more deal with it as his own property. *Mason v. C.I.R.,* 646 F.2d 1309, 1310 (9th Cir.1980).

2. *The Debtor has failed to state a basis for removing the Trustee.*

 Once appointed, only the bankruptcy court, after notice and hearing, can remove the Chapter 7 trustee. 11 U.S.C. § 324; *See also Bernard v. Coyne (In re Bernard )*, 31 F.3d 842, 844 (9th Cir.1994). Section 324 of the Bankruptcy Code provides that a trustee may be removed "for cause." However, the requisite cause for removal of a trustee, as required by § 324, has not been defined in the Bankruptcy Code; rather it must be determined by the courts on a case by case basis. *In re Lundborg,* 110 B.R. 106, 108 (Bankr.D.Conn.1990); *In re Haugen Construction Service, Inc.,* 104 B.R. 233, 240 (Bankr.D.N.D.1989). The requisite cause has been defined as, " 'reasons for which the law and sound public policy recognize as sufficient [to] warrant ... removal' and reasons which 'relate to and affect the administration of the office [of the trustee] and [which] must be restructed [sic] to something of a substantial nature directly affecting the rights and interests of the public.' " *Baker v. Seeber (In re Baker )*, 38 B.R. 705, 707 (D.Md.1983) (affirming and quoting Judge Evans, below). Most case law concerning the removal of a trustee involves intentional misconduct or negligence on the part of the trustee in the administration of the estate. *Id.* Such cause has been interpreted to include when the trustee is not disinterested, where the trustee fails to perform his or her duties or unreasonably delays in the performance of those duties. *Lundborg,* 110 B.R. at 108 (citations omitted). But, a trustee is not responsible, and therefore should not be removed, for mistakes in judgment where the judgment is both reasonable and discretionary. *Mosser v. Darrow,* 341 U.S. 267, 272, 71 S.Ct. 680, 682–83, 95 L.Ed. 927 (1951); *Lundborg,* 110 B.R. at 108. The trustee is granted complete authority and discretion

regarding the prosecution and defense of any litigation of the debtor's estate. *Nassau Savings and Loan Association v. Miller* (*In re Gulph Woods Corporation*), 116 B.R. 423, 428 (Bankr.E.D.Penn.1990).

■ Here, the only charge against the Trustee is that he has refused to join the Debtor in his war against the Maricopa County Flood District and others connected with the landfill issue. However, as can be seen from the tortured history of this case, Mr. Reed has had ample opportunity to plead his case, and has done so. Mr. Reed has been given numerous hearings, but has been unable to convince various courts of the merits of his claims. High governmental officials have investigated the situation. However, they, like the courts, have been unable to identify any wrongdoing. Under these circumstances, requiring the Trustee to pursue the same issue, yet again, would be a senseless and wasteful act. Hence, this Court cannot conclude that there is cause to remove the Trustee. Moreover, this Court cannot order that any further investigation be undertaken.

■ The Court does note, however, that the Trustee has not abandoned the causes of action, yet has taken no steps to pursue them. As has already been stated, his refusal to pursue the actions has been appropriate. However, he should also go the next step and abandon the claimed assets and the cause(s) of action, if any, or, in the alternative, the Debtor may request that the Court order the Trustee to abandon said property of the estate.

B. *Request To Proceed In Forma Pauperis.*

■ Also before this Court is Mr. Reed's request that he be allowed to proceed in forma pauperis (*see* 28 U.S.C. § 1915), which is an inquiry that is inextricably intertwined with the consideration of the merits of the pending disputes. The *in forma pauperis* statute, 28 U.S.C. § 1915, ensures the opportunity for the indigent party to proceed with meaningful access to the federal courts. *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 342–43, 69 S.Ct. 85, 90–91, 93 L.Ed. 43 (1948). But, § 1915(d) places a limitation on an unfettered attempt by an indigent to misuse or abuse the system. Section 1915(d) authorizes federal courts to dismiss a claim filed *in forma pauperis* "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) (quoting from § 1915(d)). The determination on a complaint's frivolousness is to be decided by the court entertaining the *in forma pauperis* petition. *Denton v. Hernandez,* 504 U.S. 25, 33–35, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992). Dismissals under § 1915(d) often are made *sua sponte. Neitzke,* 490 U.S. at 324, 109 S.Ct. at 1831.

■ The standard for evaluating a complaint's frivolousness is akin to determining if a complaint's merits are baseless. *Denton,* 504 U.S. at 31–33, 112 S.Ct. at 1733. An appeal on a matter of law is frivolous where none of the legal points are arguable on their merits. *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). A complaint is frivolous where it lacks an arguable basis either in law or fact. *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831–32; *Denton,* 503 U.S. at 31–33, 112 S.Ct. at 1733.

■ Previously, the Court granted Reed's request to proceed *in forma pauperis* for the proceedings regarding the removal of the Trustee. The Court also informed Reed that, pursuant to the federal statute which allowed the Court to grant pauper status, the Court would make a determination as to whether the action filed by Reed was malicious or frivolous. The Court also requested simultaneous briefs to be filed on the issue of *res judicata.*

After consideration of the record in this case, it is clear that no further evidence need be taken and it is appropriate that Mr. Reed's request be denied. Mr. Reed has had more than his day in court. His rights have been afforded substantial protection and his allegations given due consideration. To pursue the matter any further in this forum is clearly frivolous. Accordingly, Mr. Reed's request to proceed *in forma pauperis* must be denied.

C. *Request To Moot The Hearing On February 22, 1995 And To Remove Judge Marlar.*

██ Finally, Mr. Reed filed, on February 15, 1995, a "9013 Motion To Moot The Hearing On The 22nd Day of Feb. 1995 To Have Judge Marlar Removed From Reeds (sic) case. Under 28 U.S.C.A. § 455/Until the Court Orders The Investigation Of The Filing Of The False Claim By Maricopa Co. Under 18 U.S.C.A. § 3057 And The Theft Of Pauper Reeds (sic) Money And Property. That Is Mandamus Under U.S.C. 28 (sic) § 1361." Essentially Mr. Reed requests that the February 22nd be continued until his request for disqualification of Judge Motion is resolved. Given that the hearing has already been conducted, this request must be denied as moot.

Moreover, there is no basis to grant such request nor is there any basis for disqualifying Judge Marlar. Pursuant to Fed. R.Bankr.P. 5004(a), which incorporates the provisions of 28 U.S.C. § 455, there are several circumstances under which a judge may be disqualified from a case:

(1) the judge's impartiality may be questioned;

(2) the judge has a personal bias or prejudice concerning a party or has personal knowledge of "disputed" evidence;

(3) the judge was involved with the case prior to taking the bench;

(4) the judge knows, "individually or as a fiduciary," that he or his spouse or "minor child residing in his household" has a financial interest in the outcome or has an interest "that could be substantially affected"; or

(5) the judge, the judge's spouse, "or a person within the third degree of relationship with either of them or the spouse of such person" is a party, officer or director of a party, is acting as a lawyer, is known by the judge to have a substantial interest which could be affected by the outcome, or is "likely to be a material witness."

Motions to recuse are addressed to the trial court itself and the person whose impartiality is questioned is asked to rule on that very issue. 28 U.S.C. § 455; *see also Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). Allegations of partiality must have some reasonable factual basis. *See Blizard v. Frechette,* 601 F.2d 1217, 1221 (1st Cir.1979).

In this case, Mr. Reed has threatened on multiple occasions to file a motion to disqualify. In fact, he has filed several such motions with respect to Judge Marlar and also with respect to Judge Curley who was previously assigned to his case. However, he has never been able to raise even an inference that any of the grounds for disqualification exist. Indeed, it appears that the sole basis for Mr. Reed's desire to have the judges disqualified is Mr. Reed's frustration that this Court, as with all of the judges who have previously heard his complaints, has declined to rule in his favor. Dissatisfaction with a ruling is not grounds for disqualification. Thus, there is no justification for this Court to delay the resolution of the pending disputes nor to disqualify itself from this case or proceeding.

## III. *DECISION.*

By separate order entered contemporaneously herewith, the Court orders that the various motions filed by Mr. Reed, including his requests to remove the Trustee, to order an investigation, to delay hearings, and to remove Judge Marlar, are denied.

### ORDER

The Court has the above-mentioned matters under advisement. Various hearings have been held, culminating in the Court's request of the parties to file additional briefs. The Court has now considered the briefs and positions of the parties, the entire record, and applicable law, and contemporaneously herewith has filed a Memorandum Decision. Consistent therewith,

IT IS ORDERED denying all of the Debtor's motions which are indicated on the docket as items 162, 166, 170, 172, 173, 174, and 175.