**In re Judith A. DRINKWATER, Debtor.**

**In re Wilfredo GUZMAN, Debtor.**

**Bankruptcy Nos. 93–41032–HJB, 93–42766–HJB.**

United States Bankruptcy Court,
D. Massachusetts.

March 24, 1995.

## *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination are motions filed by James M. Lynch, United States trustee for Region I (the "UST"), pursuant to 11 U.S.C. § 324 and Bankruptcy Rules 9013 and 9014, for the removal of Cecilia Calabrese ("Calabrese") from the above-captioned cases and from all other cases in which she is the Chapter 13 Trustee in the Western Division of this District (jointly and severally the "UST Motions"). The UST Motions also ask the Court to order Calabrese to turnover to the UST, or his designee, all case records, including financial records and funds held by Calabrese relative to the affected cases.

## I. *BACKGROUND*

Calabrese was appointed to serve as the standing Chapter 13 Trustee for the Western Division of the District of Massachusetts by the predecessor to the UST, effective April 1, 1993. According to the UST, as of December 31, 1994, Calabrese serves as the Chapter 13 Trustee in approximately 818 cases and currently holds approximately $867,-115.05 in payments received under Chapter 13 plans. In January of 1995, the UST terminated the appointment of Calabrese as the standing Chapter 13 Trustee, meaning that she was informed that she would be receiving no new cases. The UST also requested that Calabrese resign from all pending cases in which she served as Chapter 13 Trustee (the "Pending Cases"). Calabrese refused. In response, the UST filed the instant motions.

---

1. The motion also claims that the payment to Calabrese was improperly granted because she

## II. *THE PLEADINGS*

The pleadings filed by the parties portray totally disparate pictures of Calabrese and her performance as Chapter 13 Trustee.

The UST Motions were filed on February 24, 1994. The motion with respect to the Drinkwater case complains that, notwithstanding an order confirming the plan on July 14, 1994, the dismissal of that case (at the request of the debtor) on September 21, 1994 and the closing of the case on October 5, 1994, Calabrese failed to (i) enter any of the claims in her computer system for payment, (ii) file a final report as required by 11 U.S.C. §§ 704(9) and 1302(b) or (iii) ever distribute any of the funds collected by her, other than a payment of her fee.[1]

The motion with respect to the Guzman case complains that, notwithstanding confirmation of the debtor's plan on July 14, 1994, the twelve payments received by Calabrese during the period between February 1, 1994 and December 6, 1994, totalling $5,940.00, were carried in Calabrese's computer records as "error receipts" and were never distributed to creditors.

More damaging than the foregoing, are the UST allegations common to each of the UST Motions. In substance, the UST cites the following alleged deficiencies in Calabrese's performance:

1. Calabrese has demonstrated a pattern of being unable to properly administer cases evidenced by (a) her performance in the Drinkwater and Guzman cases, (b) a complaint by the Commonwealth of Massachusetts Department of Revenue that she had failed to make distributions to that agency in a number of cases, (c) a confusing response by Calabrese to the UST with respect to at least one of those cases, (d) Calabrese's failure to follow through on her advice to the UST that she would shortly move to dismiss a number of cases on account of the failure of those debtors to make required payments, and (e) repeated mathematical and substantive legal errors in proposed orders of confirmation

never properly noticed the UST.

submitted to the UST for approval or submitted to the Court for allowance;[2]

2. Calabrese is not accountable for funds entrusted to her care as Trustee, evidenced by an accounting system so deficient that (i) as of September 23, 1994, her computer system carried the sum of $244,-728.96 as "error receipts", (ii) Calabrese has not timely performed basic monthly bank reconciliations[3], (iii) in December of 1994, auditors chosen by the Department of Justice to audit Calabrese's records[4] were unable to complete their audit or even reconcile her bank balances with her computer records or any other records, (iv) Calabrese had maintained inadequate bonding for several months, and (v) Calabrese had failed to submit required monthly reports to the UST since September, 1994 (approximately five [5] months); and

3. Calabrese had, on three (3) occasions, drawn compensation in excess of that permitted by her compensation order, pursuant to 28 U.S.C. § 586(e), or as allowed by paragraph 13–19(d) of this Court's Joint Procedural Order of September 1, 1994.

The "Initial Opposition of Chapter 13 Trustee Calabrese to Motion for Order Removing Trustee" (the "Oppositions"), filed March 16, 1995 in each of the Drinkwater and Guzman cases[5], paints a dramatically different picture of Calabrese's performance. According to the Oppositions, Calabrese failed to act in the Drinkwater and Guzman cases because she failed to receive notice of the Guzman confirmation or Drinkwater dismissal. She promises to make the appropri-ate disbursements as soon as she receives the appropriate notices. With respect to the complaint of the Commonwealth of Massachusetts Department of Revenue, Calabrese either has acted (or will soon act) on those complaints. In reply to the alleged problems with the Department of Justice sponsored audit, Calabrese claims that she provided all of the information requested and her accounts balanced against her records. In response to the UST complaint that her monthly reports to the UST have not been filed since October of 1994, Calabrese answers that she:

> has submitted monthly expense reports, monthly trust fund reports for both pre and post confirmation accounts and statements of her receipts and expenses, and bank reconciliations for her expense account for each month from October 1994 through February 1995 to the U.S. Trustee. All her financial reporting to the U.S. Trustee is current and complete.... Her records and her actions are fully accountable.

Oppositions, Page 3.

Calabrese rebuts the UST claim that she took improper compensation, by attributing the problem to "poor communications and bad timing", and rejects the notion that she failed to provide adequate notice to the UST of her request for compensation in the Drinkwater case. She responds to the claim of inadequate bonding by noting that her bond was subsequently increased. Finally, she counters the claim that she has submitted

---

2. On July 12, 1994, in response to a wide array of defective confirmation orders submitted to the Court for allowance (almost all of such defects prejudicing the rights of debtors), this Court ordered Calabrese to show cause why she should not be removed from 21 separate cases. At the hearing, held on July 18, 1994, Calabrese was not removed from those cases, but was ordered to (i) file weekly progress reports on each case not then closed and (ii) submit all future proposed confirmation orders to the UST for approval prior to submission of the orders to the Court for allowance. The UST claims that many of the orders submitted to the UST for approval thereafter were similarly defective.

3. The UST claims that, as of September 30, 1994, Calabrese had not reconciled her trust accounts for the preceding seven (7) months.

4. Every standing trustee is audited annually by a public accounting firm chosen by the Department of Justice.

5. Pursuant to Bankruptcy Local Rule 26, the Oppositions were due on or before March 3, 1995. In addition, notwithstanding their filing with the Court on March 16, 1995 at 9:45 a.m., the Oppositions were not served on the UST until minutes before the hearing on March 17, 1995, robbing the UST of a fair opportunity to respond. Because of the gravity of the matters before the Court, the Oppositions were considered by the Court. However, this was a peculiar way to persuade the Court that Calabrese was performing her duties competently and expeditiously.

improper proposed confirmation orders to the UST by indicating the problems in each of the affected cases have been "competently resolved".

In closing, Calabrese requests, as a matter of due process, the right to discovery and an evidentiary hearing.

## III. *THE HEARING*

The Court conducted a nonevidentiary hearing on the UST Motions on March 17, 1995 in Worcester[6]. At the outset, the parties reached their only agreements. First, the parties agreed that only the Court has jurisdiction to remove Calabrese from the cases in which she serves as Trustee. Second, although the UST has determined not to appoint Calabrese to any further cases[7] and this determination is not challenged, the parties also agree that, as a matter of due process, Calabrese can not be removed from the Pending Cases, absent this Court's determination, pursuant to § 324.

Oral argument by Attorney Gary Donahue ("Donahue") on behalf of the UST, and Attorney Michael Roitman ("Roitman") on behalf of Calabrese, essentially tracked the positions taken by each in their respective papers. However, Donahue added that only two days before the hearing, Calabrese had forwarded the missing monthly reports for the period of October 1994 through February, 1995. However, he noted that the reports were incomplete and unverifiable since, inter alia, required copies of bank statements were not included. Furthermore, the reports allegedly reflected a discrepancy of approximately $28,000, a matter of concern to the UST.

The Court raised the recent filing of the monthly reports with Roitman, particularly with respect to the clear implication in the Oppositions that these reports had been timely filed. In response, Roitman conceded

that they were not timely filed and that the contrary implication, if misleading, may have been his fault. He did not, however, meaningfully respond to the UST allegation that the reports were insufficient.

Roitman insisted that Calabrese was entitled to an evidentiary hearing after an opportunity to conduct discovery. He indicated that a sixty (60) day discovery period was a "bare minimum" of what was required.

Finally, counsel for the debtors Drinkwater and Guzman each addressed the Court briefly. The attorney for Drinkwater indicated that his client did not object to the allowance of the UST Motions. However, the attorney for Guzman, Francis Lafayette, urged support for Calabrese because of satisfaction experienced by Guzman with respect to Calabrese's performance. The Court's reminder that the alleged deficient performance in the Guzman case related not to the treatment of the debtor, but rather to an alleged failure to make distributions to creditors, did not elicit a meaningful reply.

At the conclusion of the hearing, the Court took the matter under advisement.

## IV. *DISCUSSION*

■ Section 324 of the Bankruptcy Code provides:

(a) The court, after notice and a hearing, may remove a trustee, other than the United States Trustee, or an examiner, for cause.

(b) Whenever the court removes a trustee or examiner under subsection (a) in a case under this title, such trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court orders otherwise.

11 U.S.C. § 324.

There are very few published decisions relating to the removal of standing Chapter

---

**6.** The hearing was originally scheduled for March 10, 1995. However, on March 8, 1995, Calabrese requested that the hearing be continued until March 17, 1995, because (i) she had a previously scheduled medical appointment on March 10, 1995 and (ii) her recently retained counsel, Michael B. Roitman, required additional preparation time. The motion was allowed. On

March 17, 1995, Mr. Roitman appeared for Calabrese. Calabrese was not present.

**7.** The parties appear to agree that the UST acted within the limits of his discretion when he made this determination. *See also* 28 C.F.R. § 58.2 (1986); *Richman v. Straley, et al.*, 48 F.3d 1139 (10th Cir.1995).

594

13 Trustees. In the case of *Matter of Chapter 13, Pending And Future Cases,* 19 B.R. 713 (Bankr.W.D.Wash.1982), the issue facing the court was whether a Chapter 13 Trustee could be removed on the grounds of the sexual harassment of employees, if the Trustee was otherwise competently performing his duties. On reconsideration, the court removed the Trustee. *Id.* In the case of *Flournoy v. Hershner,* 68 B.R. 165 (Bankr. M.D.Ga.1986), the Bankruptcy Judge decided to consolidate the District's two Chapter 13 operations by removing one Trustee. However, before the issue of cause under § 324 could be determined, the Trustee scheduled to be terminated chose to resign, thereby avoiding the § 324 hearing. The primary issue remaining was the appropriate amount owed to the departing Trustee with respect to the cases turned over [8]. Finally, in the recent case of *Richman v. Straley, et al.,* 48 F.3d 1139, the issue before the court was whether a standing Chapter 13 Trustee had a due process right to appointment in future cases. The *Richman* court answered in the negative, drawing a careful distinction between appointment in *future* cases (to which the court ruled there was no due process right) with appointment in *pending* cases (with respect to which the Court felt that removal could be accomplished only through § 324). *Id.,* 48 F.3d at 1143–44.

Without helpful precedent in the Chapter 13 context, this Court looks for precedent in the Chapter 7 context. Chapter 7 Trustees have been removed under Section 324 for cause. What constitutes sufficient cause is not defined in the Code but rather is left for the courts to determine on a case by case basis. *In re Haugen Construction Serv., Inc.,* 104 B.R. 233, 240 (Bankr.D.N.D.1989). Recently, in the case of *In re Lundborg,* 110 B.R. 106 (Bankr.D.Conn.1990), that court succinctly summarized the various decisions finding sufficient cause for removal of a Chapter 7 Trustee:

> Cause has been found to exist, inter alia, where the trustee is not disinterested, *In re BH & P, Inc.,* 103 B.R. 556, 561 (Bankr.

D.N.J.1989); *In re Paolino,* 80 B.R. 341, 344 (Bankr.E.D.Pa.1987), and where the trustee fails to perform his or her duties, *Matter of Schoen Enter., Inc.,* 76 B.R. 203, 206 (Bankr.M.D.Fla.1987), or unreasonably delays in the performance of those duties. *Matter of Island Amusement, Inc.,* 74 B.R. 18, 19 (Bankr.D.P.R.1987); *In re Mira-Pak, Inc.,* 72 B.R. 430, 431 (Bankr.S.D.Tex. 1987). In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud. *In re Acadiana Electrical Serv.,* 66 B.R. 164, 165 (Bankr.W.D.La.1986); *United States ex rel. People's Banking Co. v. Derryberry (In re Hartley,* 50 B.R. 852, 859 (Bankr. N.D.Ohio 1985). *See also Matter of Freeport Italian Bakery, Inc.,* 340 F.2d 50, 54 (2d Cir.1965). A trustee should not be removed for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances, *In re Haugen Constr. Serv., Inc., supra,* 104 B.R. at 240, and courts should consider the best interests of the estate, rather than those of a single movant-creditor, when determining whether to remove a trustee. *Baker v. Seeber (In re Baker),* 38 B.R. 705, 708 (D.Md.1983); *Gross v. Russo (Matter of Russo),* 18 B.R. 257, 273 (Bankr. E.D.N.Y.1982).

*Id.* at 108.

Notwithstanding the foregoing, the pressing issue before the Court is not whether Calabrese should be permanently removed from Pending Cases as Chapter 13 Trustee. The Court agrees with the parties that Calabrese is entitled to an evidentiary hearing after a period of discovery. However, despite the agreement of the parties that Calabrese is entitled to that evidentiary hearing, there exists a tension between the UST's call for expedited action and Calabrese's assertion that sixty (60) days for discovery is a bare minimum of what she needs to fairly present her case.[9] Therefore, the Court believes that the issues requiring prompt attention are (i) whether the Court should sus-

---

8. Neither party has yet suggested a solution of this type.

9. Of course, additional time would be consumed by the evidentiary hearing itself, the rendering of a decision by the Court and the exercise of any appellate rights.

pend Calabrese from her duties pending an evidentiary hearing on whether she should be permanently removed as Chapter 13 Trustee of the Pending Cases, (ii) whether to appoint the UST as acting Chapter 13 Trustee of the Pending Cases, and (iii) where to locate the source of this Court's jurisdiction to order the foregoing. Inasmuch as this Court was able to find no reported decisions in which a Bankruptcy Court considered such relief, the issue appears to be of first impression.

Temporary suspension of Calabrese as Chapter 13 Trustee of the Pending Cases should only be employed if that form of relief appears best suited to preserve the rights of the parties pending trial, without prejudicing the rights of others. The classic methodology for preserving the status quo pendente lite is the preliminary injunction. Therefore, although the relief to be granted here is not in the nature of a preliminary injunction, the Court looks to preliminary injunction standards employed by the this Circuit as a reasonable and equitable approach to determine whether such a temporary suspension of Calabrese would be the appropriate relief under the circumstances. More specifically, the Court must determine (i) whether there is a reasonable likelihood that the UST Motions will be allowed, (ii) whether absent the temporary suspension there is a risk of irreparable harm to those whose interests the UST represents, namely the parties in interest in the Pending Cases, (iii) whether such injury is outweighed by any injury that such a temporary suspension may do to the rights of Calabrese, and (iv) whether the public interest would be adversely affected by such a temporary suspension. See Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1225 (1st Cir.1994); Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51–52 (1st Cir. 1986); Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d 1006, 1009 (1st Cir.1981).

This Court finds that there is a reasonable likelihood that the UST Motions will be allowed, and makes that finding for the follow-

ing reasons. First, Calabrese claims that, notwithstanding her use of a computer accounting system for her duties, she maintains records of the 800 Pending Cases (and, therefore, inclusive of the necessarily thousands of financial transaction entries of claims, receipts and disbursements) part by computer and part by hand (Transcript of Hearing of March 17, 1995 [the "Transcript"], p. 20). The UST's allegation that over $200,000.00 (20%) of the funds that she holds are listed in her computer records as "error receipts" was uncontroverted. And, Calabrese suggests that her preparation of reports of funds held by her (in late 1994) were left to await some "baseline" yet to be established for 1993. Transcript, p. 20. None of these admissions or uncontroverted allegations by Calabrese bode well for the likelihood that she can persuade the Court that her records are readily subject to audit. Second, Calabrese admits that she failed to provide the UST with monthly reports for several months. Transcript, pp. 18–20. Her hurried and incomplete effort to supply the reports in advance of the hearing does not negate her previous failure to render herself accountable to the UST and suggests that Calabrese has been unwilling (or unable) to permit the UST the review to which the UST is entitled. Third, Calabrese does not contest the UST's allegation that she has frequently submitted orders of confirmation that were in varying respects defective [10] and has not timely made distributions or filed motions to dismiss cases where dismissal was required. She merely says that on the cases subject to the Department of Revenue complaint she "started making disbursement on the claims; filed a motion to dismiss; or will move to dismiss each of the cases." Oppositions, p. 2. This is hardly a strong statement of denial.

In view of the colorable allegations of Calabrese's failure to (i) properly maintain the books and records necessary to the orderly administration of the Chapter 13 program in

10. Calabrese can hardly contest the problems which led to this Court's Order of July 18, 1994 with respect to 21 such cases. As to confirmation orders since that time, several of the orders referred to in the UST Motions are described in the Oppositions to be resolved because now moot. Calabrese does not specifically controvert the UST's allegation that the confirmation orders were defective when originally presented.

the Western Division of this District (ii) file with the UST timely and verifiable reports of her financial transactions, and (iii) properly administer the cases in her charge, many of which allegations are uncontroverted [11] and are, therefore, deemed by the Court under the circumstances as acknowledged by her for the purpose of this interim order, the Court finds that it is reasonably likely that the UST will succeed in showing breach of fiduciary duty and at least the risk of actual harm to parties in interest in the Pending Cases.

The Court also finds that absent the temporary suspension, there is a risk of irreparable harm to parties in interest. Although there has been absolutely no evidence which would support a finding of defalcation, this Court takes judicial notice that a delay in the administration of a Chapter 13 case can have devastating consequences. In contrast to the administration of a Chapter 7 case, the administration of a Chapter 13 case involves payment through the Chapter 13 Trustee of post-petition debts that the Debtor pays through the Chapter 13 Trustee. Unjustifiable delays in the making of these payments defeats the purpose of the Chapter 13 proceeding itself. When payments are not made to creditors pursuant to the plan, despite the Debtor's compliance with plan requirements, the debtor's credit standing may be further damaged and the reorganization process irreparably harmed. Furthermore, if the Chapter 13 Trustee takes no action despite the debtor's default in making plan payments, otherwise patient creditors may find that they have been restrained from going forward to collect their debts without realizing that no funds have been paid for their benefit to the Chapter 13 Trustee.

The risk of the foregoing harm to creditors outweighs any risk of harm to Calabrese arising from her temporary suspension. The potential economic harm to Calabrese from a temporary suspension could arise in two ways. First, if this Court does not otherwise provide, Calabrese could suffer a loss of compensation, pursuant to 28 U.S.C. § 586(e). Second, with a loss in the use of her files,

Calabrese's defense of the UST Motions could be hampered. The Court will, therefore, ameliorate the risk of harm by ordering, as set forth below, that (i) the UST alone serve as acting Chapter 13 Trustee (subject, of course, to delegation within his office), pending a final order on the UST Motions, (ii) all compensation that would be otherwise be payable on account of disbursements made by the UST on Pending Cases be separately escrowed, (iii) Calabrese be granted a lien in the escrowed account to the extent of her interest, (iv) upon the issuance of a final order, if any, denying the UST Motions, the escrowed fund be turned over to Calabrese as if she had made the disbursements, less only the such amount as the Court may determine was the cost savings to Calabrese and (v) upon the issuance of a final Order allowing the UST Motions, the escrowed account be turned over to the UST, less only such amount as the Court shall determine is due to Calabrese, pursuant to 28 U.S.C. § 586(e), or otherwise. The Court will further order that (i) Calabrese's files be removed from her possession at the cost of the UST, chargeable to her interest in the escrow account only if the UST Motions are allowed, and (ii) the files shall be maintained in the office of the UST in Worcester and be made available to Calabrese for inspection and copying by Calabrese or her agents during reasonable business hours and upon 48 hours prior notice. Finally, this Court's Order will suspend the restrictions of Local Rule 26(D), so that any discovery disputes can be brought to the Court's attention on an expedited basis.

Furthermore, this Court is satisfied the action taken by the Court today does not adversely affect the public interest. It is in the public interest that the Chapter 13 program in the Western Division of this District be efficient and perceived as accountable. The Court's action today attempts to assure that those goals are met, even on a temporary basis.

 Finally, this Court must · address the source of its jurisdiction to enter the order issued today. Section 324 provides for

---

**11.** Even Calabrese says "[s]he contests many, if not most, of the allegations contained in the

[UST Motions]." Transcript, P. 16). Pointedly, Calabrese does not contest all of the allegations.

nothing other than permanent removal. However, this Court doubts it is possible that, in light of the concerns stated above, Congress would have intended that this Court be powerless to address a threat of harm to the debtors and creditors of the Pending Cases [12]. In view of the absence of express statutory direction, 11 U.S.C. § 105 plays its critical role. That section provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105. Of course, a bankruptcy court's authority to enter orders, employing the flexibility afforded by § 105(a) is not unlimited. *Official Unsecured Creditors' Committee v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir.1993) ("[S]ection 105(a) [does not] authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties."); *In re GSF Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991); *In re Plaza de Diego Shopping Center, Inc.*, 911 F.2d 820 (1st Cir.1990) ("[T]he bankruptcy court's equitable discretion is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code").

The Court is especially mindful of the *Plaza* case. In that case, this Circuit held that the bankruptcy court had no authority under § 105(a) to appoint a Chapter 11 Trustee, absent refusal of the United States Trustee to act. 911 F.2d 820. However, this Court believes that the order contemplated herein is contained within the sound limitations of § 105(a) and that the facts are distinguishable from the *Plaza* case. It is true that the power to appoint a Chapter 13 Trustee is, pursuant to 28 U.S.C. § 586(b) established solely in the UST. But this Court is not

making a permanent appointment. The Court is making only a temporary appointment of the UST as acting Chapter 13 Trustee of the Pending Cases, pendente lite and based on extraordinary circumstances. The issue now before the Court is not the subject of any provision of the Bankruptcy Code, and, therefore, the Court's order is hardly inconsistent with any provision of the Code. Furthermore, the UST can be hardly heard to complain if the Court's logical choice for acting Chapter 13 Trustee is the UST himself. The Court would also note that within the recent past the UST has served as acting Chapter 13 in the Eastern Division of this District when, for an extended period of time, there was a vacancy in that position.

Based on the foregoing factors and considerations, the Court is constrained to order the following relief, pendente lite:

1. Calabrese is hereby removed, on a temporary basis, pendente lite, as the Chapter 13 Trustee of the Pending Cases, and the UST is substituted as acting Chapter 13 Trustee, until further order of the Court;

2. Calabrese is ordered to forthwith make available for removal by the UST, at the expense of the UST, all files, accounts, accountings, and books and records relating to the Pending Cases (the "Pending Case Documents") and further to forthwith turn over to the UST all moneys, deposits and bank accounts relating to the Pending Cases (the "Pending Case Proceeds");

3. The UST shall cause to be paid into one or more segregated accounts (the "Proceeds Accounts") all of the Pending Case Proceeds and all other moneys received by him thereafter and relating to the Pending Cases and shall keep separate records relating to all receipts and disbursements therefrom;

4. The UST shall also maintain a specially segregated interest bearing account (the "Compensation Account") into which the UST shall deposit all compensation which would have been due to Calabrese, pursuant to 28 U.S.C. § 586(e) or otherwise, as

---

12. Over 800 cases likely constitute over 1,000 individual debtors and well over 10,000 creditors.

if she had made all of the disbursements from the Proceeds Accounts;

5. Calabrese is hereby granted a lien in the Compensation Account to the extent of her interest;

6. Upon the issuance of a final order, if any, denying the UST Motions, the proceeds of the Compensation Account, including interest, shall be turned over to Calabrese as if she had made all disbursements from the Proceeds Accounts, less only such amount as the Court may determine was a cost savings to Calabrese as a result of the disbursements made by the UST;

7. Upon the issuance of a final order allowing the UST Motions, the Compensation Account shall be turned over to the UST, less only such amount as the Court shall determine is due to Calabrese, pursuant to 28 U.S.C. § 586(e), or otherwise, reduced by the cost of the removal from her possession of the Pending Case Documents;

8. The Pending Case Documents and all other documents arising thereafter with respect to the Pending Cases shall be maintained in the offices of the UST in Worcester, Massachusetts and will be made available to Calabrese or her agents during reasonable business hours and upon 48 hours prior notice;

9. The UST is ordered to notify each party in interest in the Pending Cases of his substitution as acting Chapter 13 Trustee as soon as reasonably possible;

10. The deadline for completion of discovery in this matter is set for June 30, 1995, subject to further extensions as may be approved by the Court, upon Motion filed prior to the said deadline;

11. In the event of any motion filed by the parties relating to a discovery dispute, the said motion shall be heard on an expedited basis, without regard to the provisions of Local Rule 26(D).

12. A pre-trial conference is set for July 18, 1995 at 10:00 am. in Worcester, Massachusetts.