In the Matter of **FREEPORT ITALIAN BAKERY, INC., Bankrupt.**
No. 249, Docket 29209.

United States Court of Appeals
Second Circuit.

Argued Dec. 15, 1964.

Decided Jan. 8, 1965.

Seymour J. Schlesinger, West Hempstead, N. Y., for appellant.

Marcus D. Grayck, Mineola, N. Y., for appellee.

Before FRIENDLY, HAYS and MARSHALL, Circuit Judges.

HAYS, Circuit Judge.

A general creditor of the bankrupt corporation seeks the removal of the trustee, Dominick Cataldo, on grounds of improper election, for making false and fraudulent claims against the bankrupt estate in his capacity as creditor, and for failing to prosecute the claims of the estate to its detriment. The referee denied this relief without opinion.

In another motion the same creditor seeks to expunge the claims filed by the trustee, Dominick Cataldo, and Cataldo's mother-in-law, Ortenza Bellacicco, for lack of consideration and because of fraudulent statements made to obtain credit from others for the bankrupt corporation. After a hearing and upon consideration of earlier testimony of Cataldo in the bankruptcy proceeding the referee ordered the Cataldo and Ortenza Bellacicco claims expunged. On petition for review, the district court ordered that additional proof be taken and that the referee's findings of fact and conclusions of law be reconsidered. After holding further hearings and taking more evidence the referee reduced the amounts of the Cataldo and Ortenza Bellacicco claims and subordinated them to the claims of the objecting creditor.

Although the objecting creditor thus prevailed in the second order of the referee, it brought a petition to review the order in the district court. At the same time it petitioned for review of the referee's order denying its motion for removal of the trustee. It is from the district court's dismissal of these petitions that the creditor now appeals.

We reverse the order denying the motion to remove the trustee and vacate all orders hitherto made in these proceedings allowing and rejecting claims against the bankrupt estate.

We review briefly the evidence adduced before the referee:

Late in 1955 Philip Bellacicco, who was conducting a small wholesale bakery business as a sole proprietorship, decided to incorporate the business as the Freeport Italian Bakery, Inc. Although a corporate charter was secured on October 1, 1955, the corporation did not start its operations until February 1, 1956, and a bank account was not opened in the corporate name until February 6, 1956. Philip Bellacicco was then president of the corporation. He sought new capital to finance equipment purchases and to provide working capital for his bakery. He solicited loans from his brother Leo Bellacicco and from Dominick Cataldo, who was Leo's son-in-law. At the hearing Dominick Cataldo testified that between November 1955 and March 1956 he and Leo Bellacicco advanced some $15,000 to Philip Bellacicco for the benefit of the bankrupt corporation and that in December 1956 Leo advanced another $2150.70 to a supplier of the corporation, to whom he had previously guaranteed payment for flour. Philip Bellacicco also testified to these transactions. Leo Bellacicco died in 1957; his widow and sole heir, Ortenza Bellacicco, did not testify.

The parol evidence was supplemented by a series of cancelled checks signed by Leo or Dominick made to Philip Bellacicco personally, and endorsed by him. One check for $5500 was further endorsed in the name of the bankrupt corporation; it was the only check issued after the bank account had been opened. There were also two checks for $2000 each to Philip Capurso from Leo, and Philip Capurso produced check stubs showing two advances of $2000 each to Philip Bellacicco. There was evidence in the corporate records that the advance of $2150.70 by Leo in December 1956 was in payment of flour bought by the bankrupt corporation.

Dominick Cataldo testified that by these transactions he had lent $7500 and Leo Bellacicco had lent $9650.70 to the bankrupt corporation. Philip Bellacicco testified that these funds were intended to buy new equipment for the corporation. A ledger of the bankrupt indicated as of June 1956 a total of $15,000 in loans made by "Brother," presumably Leo Bellacicco, and a subsidiary ledger showed $15,000 owed to "Leo Bellacicco." Another ledger book of the corporation omitted any entry for these loans, but, according to the testimony of an expert accountant, this ledger was fraudulently compiled either for tax purposes or in order to deceive possible lenders. The ledgers do not show any loans from Dominick Cataldo.

There was evidence at the hearings that in 1958 and 1959 loans were solicited from others, including a bank, the objecting creditor, and other creditors, by means of oral and written statements of Dominick Cataldo, Philip Bellacicco and others purporting to list all the bankrupt's creditors, but omitting to list any advances from Cataldo and Leo Bellacicco.

In July 1958, under pressure of Dominick Cataldo, Philip Bellacicco had his lawyer prepare a series of notes to Cataldo and Ortenza Bellacicco, Leo's widow, in the total amounts respectively of $8400 and $10,752 plus interest at 4% per annum and reasonable attorney's fees on default. Philip Bellacicco signed these notes as president of the corporation and in his own name.

Sometime in 1957 or 1958 Arthur Mazzone, Philip Bellacicco's son-in-law, succeeded him as president of the corporation. In February 1959 he signed, as president, a second series of notes in the same principal amounts as the first series, i. e., to Dominick and Isabella Cataldo, $8400, and to Ortenza Bellacicco, $10,752. These notes contained the same terms as the first series.

In early 1959 checks were issued in payment of the first and second notes in the second note series. However, these checks were returned marked "insufficient funds."

The business failed in 1960 when its remaining assets were conveyed to others by sheriff's sale. However, in 1961 the corporation was revived by the death of its then president, Arthur Mazzone, who had taken out a $50,000 life insurance policy of which the corporation was the beneficiary.

Dominick Cataldo and Ortenza Bellacicco thereupon brought suit in the state court against Philip Bellacicco and the corporation on the first series of notes. A default judgment was obtained against Philip, but the corporation was not served with process. Dominick and Isabella Cataldo and Ortenza Bellacicco then brought a second action against the corporation, based upon the second note series. While this was pending, Dominick, Isabella, and Ortenza filed a petition for involuntary bankruptcy. Thereafter the state court rendered a default judgment against the bankrupt and in favor of the Cataldos in the amount of $10,590, including interest and attorney's fees, and in favor of Ortenza Bellacicco in the amount of $13,713.86, also including interest and attorney's fees.

In the bankruptcy proceedings Dominick and Isabella Cataldo and Ortenza Bellacicco filed claims in the amounts awarded in the second judgment. By vote of these claims, Dominick Cataldo was eelcted and confirmed as trustee of the bankrupt estate.

As trustee Dominick Cataldo made no effort to assert a claim for the estate against his uncle-in-law Philip Bellacicco, who was concededly a co-maker of the first note series, and thus possibly jointly liable on those notes. If it be asserted that the first note series had been cancelled by the issuance of the second series, it should be noted that Cataldo had in his own interests obtained a judgment on the first series against Philip in the state court.

Section 44, sub. a of the Bankruptcy Act [1] provides for the election of trustees by vote of the creditors, excluding relatives of an individual bankrupt and directors, officers and stockholders of corporate bankrupts. Section 45 [2] requires, *inter alia*, that trustees be "competent to perform their duties." Under Section 2, sub. a(17) the courts of bankruptcy may "upon complaints of creditors or upon their own motion, remove for cause receivers or trustees upon hearing after notice." [3]

■ Potential conflicts of interest do not of themselves disqualify creditors from being appointed trustees in bankruptcy, even when they have already acted as a receiver, assignee for the benefit of creditors, or reorganization trustee, i. e., in capacities in which they must account to the bankruptcy court for their stewardship of the bankrupt's estate. In the Matter of G. E. C. Securities, Inc., 331 F.2d 655 (2d Cir. 1964); In the Matter of Eloise Curtis, Inc., 326 F.2d 698 (2d Cir. 1964). See also Schwartz v. Mills, 192 F.2d 727, 29 A.L.R.2d 1161 (2d Cir. 1951). The fact that Dominick Cataldo is a nephew-in-law and cousin of the two presidents of the bankrupt corporation does not of itself disqualify Cataldo from voting for or being appointed *as* trustee. Grounds for disapproval or removal of a trustee in bank-

ruptcy are not to be found in his formal relationships. "[W]e have traditionally stressed the elements of fraud and actual injury to the debtor interests * * *." Schwartz v. Mills, supra, 192 F.2d at 729.

■ In seeking review by the bankruptcy court on the motion to remove Cataldo as trustee, the petitioning creditor alleged that the trustee "fraudulently filed, received and failed to object to claims against the Estate" and was "guilty of conflict of interest in seeking to uphold claims against the Estate which he well knew were not proper claims." The district court held that the allegations of fraud and abuse of office were insufficiently detailed under the Federal Rule of Civil Procedure 9(b), and that factual findings of the referee as to the trustee's administration of the estate must be accepted unless "clearly erroneous." However, these principles were misapplied because (1) the district court had before it the companion petition for review of the referee's subordination of the Cataldo claim on grounds of his fraud, and (2) the referee issued no opinion or findings of fact when he summarily denied the motion to remove the trustee.

■ Where the trustee (1) is a close relative of the principals of the bankrupt corporation *and* of its major credi-

---

1. 52 Stat. 860 (1938), 11 U.S.C. § 72, sub. a (1958):

"The creditors of a bankrupt, exclusive of the bankrupt's relatives or, where the bankrupt is a corporation, exclusive of its stockholders or members, its officers, and the members of its board of directors or trustees or of other similar controlling bodies, shall, at the first meeting of creditors after the adjudication, or after a vacancy has occurred in the office of trustee, or after an estate has been reopened, appoint a trustee or three trustees of such estate. If the creditors do not appoint a trustee or if the trustee so appointed fails to qualify as herein provided, the court shall make the appointment. * * *"

2. 52 Stat. 860 (1938), 11 U.S.C. § 73 (1958):

"Receivers and trustees shall be (1) individuals who are competent to perform

their duties and who reside or have an office in the judicial district within which they are appointed * * *."

3. 52 Stat. 842 (1938), 11 U.S.C. § 11, sub. a (17) (1958):

"The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act * * * to—

"(17) Approve the appointment of trustees by creditors or appoint trustees when creditors fail so to do; and, upon complaints of creditors or upon their own motion, remove for cause receivers or trustees upon hearing after notice * * *."

tors, (2) has participated in defrauding other creditors by concealing his own claims, (3) has filed an exaggerated claim in his own behalf and in behalf of his mother-in-law, and (4) has not fulfilled his duty as trustee to press all legitimate claims of the estate, there can be no other choice but to remove him as trustee. See In re Allen B. Wrisley Co., 133 F. 388 (7th Cir. 1904), cert. denied sub nom. Central Commercial Co. v. Chicago Title & Trust Co., 197 U.S. 622, 25 S.Ct. 798, 49 L.Ed. 910 (1905).

■ One of the consequences of the trustee's status as a disputed creditor of the bankrupt has been that another creditor has had to bear the brunt of challenging the disputed claims from a position of doubtful standing. See Fred Reuping Leather Co. v. Fort Greene Nat'l Bank, 102 F.2d 372 (3d Cir. 1939). The conflict of interest between Cataldo as creditor and as trustee has also caused unnecessary delay and confusion to the detriment of the bankrupt estate and its creditors. See Zimmerman v. Farmington Shoe Co., 31 F.2d 405 (1st Cir. 1929). If the administration of the estate in bankruptcy would suffer more from the discord created by the present trustee than would be suffered from a change of administration, the removal of the trustee is necessarily the better solution.

We reverse the order denying the removal of Dominick Cataldo as trustee, direct his removal forthwith, and direct the appointment as trustee of some person having no previous connection with any of the parties in this bankruptcy proceeding.

It is highly doubtful whether the petitioning creditor had standing to seek review of the order refusing to expunge the Cataldo and Bellacicco claims since, having succeeded in getting those claims subordinated to its claim, it was hardly in the position of an aggrieved person within the meaning of Section 39, sub. c [4] and Section 25, sub. a [5] of the Act.

■ We are prepared to hold, however, that, in a case like this, where the mischief done by the trustee extends back to the time of his appointment, we have power, ancillary to our removal of the trustee, to vacate all orders allowing and rejecting claims, thus wiping the slate clean for the new trustee to take over. See Bankruptcy Act, Section 57, sub. k.[6]

We therefore dismiss the petition seeking review of the district court's order on expunging the claims, and as a part of our disposition of the petition for review of the order with respect to removal of the trustee, we vacate all orders hitherto entered allowing and rejecting claims.

4. 74 Stat. 528 (1960), 11 U.S.C. § 67, sub. c (Supp. V, 1964):
"A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. * * *"

5. 66 Stat. 424 (1952), 11 U.S.C. § 48, sub. a (1958):
"Appeals under this Act to the United States courts of appeals shall be taken within thirty days after written notice to the aggrieved party of the entry of the judgment, order or decree complained of, proof of which notice shall be filed within five days after service or, if such notice be not served and filed, then within forty days from such entry."

6. 52 Stat. 867 (1938), 11 U.S.C. § 93, sub. k (1958):
"Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed."